UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DON R. CLARK, JR., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:21 CV 788 RWS |
| | ) | |
| CITY OF ST. LOUIS, MISSOURI, | ) | |
| et al., | ) | |
| | ) | |
| Defendants, | ) | |

**MEMORANDUM AND ORDER**

Don R. Clark, Sr. was shot and killed when officers of the St. Louis

Metropolitan Police Department (SLMPD) executed a "no knock" search warrant

at his residence.  His children filed this complaint against Defendants the City of

St. Louis and the police officers involved in the incident.  Plaintiffs assert claims

for constitutional violations and for wrongful death.  Defendants all filed motions

to dismiss based on various grounds including a failure to state a claim and

immunity defenses.  I will grant in part and deny in part these motions for the

reasons stated below.

### Background

According to the complaint, in February 2017, Defendant Thomas Strode, a

detective with SLMPD sought "no knock" search warrants for three houses on the

same block of California Avenue, in St. Louis, Missouri.  One of the houses was

recently occupied by Clark, a 63-year-old veteran who suffered from several health conditions.  His bed was in the front room of his house across from the front door. Plaintiffs allege that in the warrant applications Strode used identical language in parts of the affidavits for all three properties and falsely characterized Clark as a criminal and guilty by association.  In the affidavit for Clark's house Strode allegedly knowingly made false allegations that Clark sold illegal drugs and harbored both illegal drugs and illegal firearms in his home.  These allegations were attributed to confidential informants.  Plaintiffs allege that Strode lied about the existence of the reliable confidential informants or, in the alternative, that he knew the informants' allegations about Clarks' criminal activity were false from Strode's own limited investigation and observations.  Plaintiffs allege that Strode lied in his affidavit when he stated he observed foot and vehicle traffic consistent with narcotic trafficking activity at Clark's home.  Strode falsely attributed activities happening at the other two properties to activities at Clark's home. These false representations allowed Strode to secure a search warrant of Clark's home without probable cause.

Strode and Defendant John Jones, a sergeant with the SLMPD, created a plan to execute the "no knock" search warrants.  On February 21, 2017, Strode and Jones met with the SLMPD Special Weapons and Tactics Team (SWAT) and

reviewed the information Strode provided in an operations plan.  That night the

SWAT team executed the "no knock" warrants for the three properties on

California Avenue.  Immediately after executing the search warrants on the first

two properties, the SWAT team broke down Clark's door and detonated a

diversionary flash/bang device.  Clark was sleeping on his bed and was jarred

awake.  The officers did not identify themselves or give directions to Clark.  The

officers rushed into the residence and, without warning, Defendant Nicholas

Manasco, a police officer in the SLMPD, shot a "barrage" of bullets at Clark with

an assault rifle.  Clark fell to the floor beside his bed.  At least nine bullets entered

Clark's body.  Upon information and belief, Clark was unarmed and did not do

anything that would have been an immediate threat to the officers.  Manasco and

another officer, Defendant James Zwiling, stood over Clark with "guns pointed"

while other officers ran by into the rest of the house.  Neither Manasco or Zwilling

nor any of the officers who ran by them ever called for medical help.  None of the

officers tried to staunch the blood flowing from Clark's wounds.  After "crucial

minutes had passed" Defendant Scott Aubuchon, a police officer with the SLMPD,

called for Emergency Medical Services, but Clark died later from his wounds.

After searching the first two raided houses Strode was allegedly seen carrying a

box from one of houses into Clark's house.  Strode reported in his return of the

search warrant that illicit drugs were found in Clark's home.

Plaintiffs' complaint asserts claims against the City of St. Louis (The City) and against twenty-one police officers in their individual capacities.  In Count I Plaintiffs assert that Defendant Strode's deliberate falsehoods or reckless disregard for the truth in his search warrant application affidavit, and/or, Strode's lack of reasonable suspicion that a "no knock" warrant was necessary for the search of Clark's home violated Clark's right to be free from unlawful seizure under the Fourth Amendment of the Constitution of the United States and 42 U.S.C. § 1983.

In Count II Plaintiffs assert that Strode's "constitutionally deficient investigation" was reckless and purposeful and violated Clark's right to be free from reckless investigation under the Fourteenth Amendment of the Constitution of the United States and 42 U.S.C. § 1983.

In Count III Plaintiffs assert that Strode's "decision to authorize a SWAT team to execute the warrant" was unreasonable and violated Clark's right to be free from the unlawful authorization of the SWAT team to execute the search warrant under the Fourth Amendment of the Constitution of the United States and 42 U.S.C. § 1983.

In Count IV Plaintiffs assert that Defendant Manasco's failure to announce himself as a police officer or provide a warning before entering Clark's house and

shooting an unarmed Clark multiple times with an automatic rifle violated Clark's right to be secure in his person, his right to be free from an unreasonable seizure of his person, and his right to be secure from excessive force under the Fourth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. § 1983.

In Count V Plaintiffs assert a deliberate indifference claim against the police officers who participated in the execution of the search warrant.  The officers are Defendants John Jones, Nicholas Manasco, James Wurm, Brandon Moore, Ronald Mueller, Joshua Becherer, Ronald Allen, Bennie Blackmon, Daniel Book, Matthew Tesreau, James Zwilling, Mark Seper, Glennon Frigerio, Joseph Busso, Jon Long, Daniel Cora, Timothy Boyce, Michael Flatley, and Curtis Burgdorf. Plaintiffs allege that these officers failed to provide medical care to Clark or to summon medical care "in the first crucial minutes" after Clark was shot in violation of Clark's right to be free from deliberate indifference to his medical needs under the Fourteenth Amendment of the Constitution of the United States and 42 U.S.C. § 1983.

In Count VI Plaintiffs assert a municipal liability claim against Defendant The City under Monell v. Department of Social Services, 436 U.S. 658 (1978). Plaintiffs assert that The City has policies and/or customs of seeking warrants

without probable cause, unreasonably requesting and deploying SWAT teams for all search warrants, and failing to ensure police officers are supervised and disciplined for violations of arrestees' individual rights.  Plaintiffs allege that The City's custom and practice was a moving force behind the violation of Clark's constitutional rights.

In Count VII Plaintiffs assert that Defendants The City and Strode created a dangerous situation that violated Clark's substantive due process rights to "personal safety" under the Fourteenth Amendment of the Constitution of the United States and 42 U.S.C. § 1983.

In Count VIII Plaintiffs assert a state law wrongful death claim under Mo. Rev. Stat. §537.080 against all of the defendants.

Defendants have all filed motions to dismiss Plaintiffs' claims.  Because Plaintiffs have alleged sufficient facts to support of some of their claims I will deny some of the motions to dismiss.

### *Legal Standard*

When ruling on a motion to dismiss, I must accept as true all factual allegations in the complaint and view them in light most favorable to the Plaintiff. Fed. R. Civ. P. 12(b)(6); Erickson v. Pardus, 551 U.S. 89, 94 (2007).  The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the

legal sufficiency of the complaint.  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  To survive a motion to dismiss, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Id. at 555.  A pleading that merely asserts conclusory statements, "a formulaic recitation of the elements of a cause of action" and "naked assertions" that are not factually supported is insufficient to state a claim for relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557).

***Discussion***

*Counts I, II, and III*

Counts I, II, and III are directed at the actions taken by Defendant Strode. Plaintiffs allege that Strode violated Clark's Fourth and Fourteenth Amendment rights because Strode (1) asserted deliberate falsehoods or had a reckless disregard for the truth in his search warrant application affidavit, and/or, lacked a reasonable suspicion that a "no knock" warrant was necessary for the search of Clark's home; (2)  conducted a "constitutionally deficient investigation" that was reckless and purposeful; and (3) that Strode's decision to authorize a SWAT team to execute the warrant was unreasonable and violated Clark's right to be free from the unlawful

authorization of the SWAT team to execute the search warrant.

Plaintiffs allege that Strode's affidavit in support of the warrant included information that he knew to be false, including, that Clark was harboring and selling illegal drugs and harboring illegal guns and that Strode observed foot and vehicle traffic at Clark's house that was consistent with drug trafficking.

Providing deliberate false information or having a reckless disregard for the truth in an affidavit seeking a warrant violates the Fourth Amendment.

> The U.S. Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and requires that warrants shall be supported by probable cause. U.S. Const. amend. IV. A warrant based upon an affidavit containing deliberate falsehood or reckless disregard for the truth . . . violates the Fourth Amendment.

Z.J. by & through Jones v. Kansas City Bd. of Police Commissioners, 931 F.3d 672, 686 (8th Cir. 2019)(cleaned up).  See also Hartman v. Bowles, 39 F.4th 544, 546 (8th Cir. 2022) ("Intentionally or recklessly omitting key facts [in an affidavit in support of a search warrant] can also lead to a Fourth Amendment violation.") and Malley v. Briggs, 475 U.S. 335, 345 (1986) (an officer who provides information in a search warrant affidavit that leads to an arrest is "not entitled to immunity unless the officer has an objectively reasonable basis for believing the facts alleged in his affidavit are sufficient to establish probable cause.").  Plaintiffs' allegations are sufficient to state a claim against Strode for a Fourth Amendment

violation.

Plaintiffs allege that Strode's affidavit was also based on a constitutionally deficient investigation because he purposely ignored evidence suggesting Clark's innocence.  See Engesser v. Fox, 993 F.3d 626, 629 (8th Cir. 2021) (a reckless-investigation claim may be established by purposely ignoring evidence suggesting the defendant's innocence).  Strode's affidavit included details from confidential informants but Strode admits that he failed to corroborate or confirm their claims. Strode also failed to observe Clark around his home to see how infirm he appeared to be.  Strode never attempted to conduct a controlled purchase from Clark. Plaintiff's allegations are sufficient to state a claim for a Fourteenth Amendment violation.

Plaintiffs also allege that Strode violated Clark's rights because he sought a "no knock" warrant that would be executed by the SWAT team but had no reason to do so.  Plaintiffs allege that Strode did not have any information and had not done any investigation which supported the need to send in the SWAT team. Plaintiffs' counsel found that Strode requested and received "no knock" warrants in 100% of the 27 search warrant applications he made in the year prior to the Clark warrant indicating Strode's indiscriminate use of SWAT teams without a reasonable basis.  Z.J. by & through Jones, 931 F.3d at 688 ("An officer's decision

to authorize a SWAT team to execute a warrant can, in some cases, constitute a Fourth Amendment violation.[]  It is clear the decision to send a SWAT team into a residence must be reasonable.")  Plaintiffs' allegations are sufficient to state a claim for a Fourth Amendment violation.

Strode has filed a motion to dismiss the claims against him in Counts I, II, and III asserting that Plaintiffs do not have standing to pursue the violation of Clark's the Fourth and Fourteenth Amendment rights.  Strode argues that Clark's constitutional personal injury claims are controlled by Missouri' survivorship statute, Mo. Rev. Stat. § 537.020., which grants standing to bring suit solely to the personal representative of a decedent's estate.  That assertion is not correct.  Under Missouri law when a decedent suffers fatal injuries by the acts of a defendant the surviving children have standing as individuals to assert an action for personal injuries on behalf of the decedent under Missouri's wrongful death statute Mo. Rev. Stat. § 537.080 and 42 U.S.C § 1983.  Andrews v. Neer, 253 F.3d 1052, 1058 (8th Cir. 2001).

Strode also argues that he is entitled to qualified immunity on Plaintiffs' claims.  "The doctrine of qualified immunity protects public officials from personal liability under 42 U.S.C. § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

would have known." <u>Williams v. City of Burlington, Iowa</u>, 27 F.4th 1346, 1350 (8th Cir. 2022) (cleaned up).  A "court addresses two questions in analyzing qualified immunity: 1) whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right and 2) whether the right at issue was clearly established at the time of defendant's alleged misconduct." <u>Id.</u> (cleaned up).  I find that the claims in Counts I, II, and III assert facts that support violations of Clark's constitutional rights and that these rights were clearly established at the time Clark was shot during the execution of the search warrant at his house.  See *supra* the factual allegations and cases cited in support of the claims.  As a result, I find that Plaintiffs' alleged facts sufficiently state claims in Counts I, II, and III, that they have standing to assert these claims, and that Strode is not entitled to qualified immunity on these claims.

*Count IV*

Plaintiffs assert an excessive force claim against Defendant Manasco for shooting Clark upon entering his house.  Whether a police officer used excessive force in violation of the Fourth Amendment turns on whether the amount of force used was objectively reasonable under the particular circumstances.  <u>Torres v. City of St. Louis</u>, 39 F.4th 494, 503 (8th Cir. 2022).  "The reasonableness of a use of force turns on whether the officer's actions were objectively reasonable in light of

the facts and circumstances confronting him, without regard to his subjective intent or motivation." Williams, 27 F.4th at 1351 (citation omitted).  If an officer does not have probable cause "to believe that the suspect poses an immediate threat of death or serious bodily injury to others, use of deadly force is not objectively reasonable." Torres, 39 F.4th at 503 (cleaned up).

Plaintiffs allege that in executing the search warrant the officers did not identify themselves or give directions to Clark.  The officers rushed into the residence and, without warning, Manasco shot a "barrage" of bullets at Clark with an assault rifle.  Plaintiffs allege, upon information and belief, that Clark was unarmed and did not do anything that would have been an immediate threat to the officers.

Manasco has not filed a motion to dismiss this claim.

*Count V*

In Count V Plaintiffs assert a deliberate indifference claim against the police officers who participated in the execution of the search warrant.  The officers are Defendants John Jones, Nicholas Manasco, James Wurm, Brandon Moore, Ronald Mueller, Joshua Becherer, Ronald Allen, Bennie Blackmon, Daniel Book, Matthew Tesreau, James Zwilling, Mark Seper, Glennon Frigerio, Joseph Busso,

Jon Long, Daniel Cora, Timothy Boyce, Michael Flatley, and Curtis Burgdorf.[1]

Plaintiffs allege that these officers failed to provide medical care to Clark or to

summon medical care "in the first crucial minutes" after Clark was shot in

violation of Clark's right to be free from deliberate indifference to his medical

needs under the Fourteenth Amendment of the Constitution of the United States

and 42 U.S.C. § 1983.

The Due Process Clause of the Fourteenth Amendment requires the

responsible governmental agency to provide medical care to persons who have

been injured while being apprehended by the police.  City of Revere v.

Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983).  See also Teasley v. Forler,

548 F. Supp. 2d 694, 709 (E.D. Mo. 2008) (same).  "This duty is fulfilled,

however, by promptly 'summoning the necessary medical help or by taking the

injured detainee to the hospital.'"  Teasley, 548 F. Supp. 2d at 709 (quoting

Maddox v. City of Los Angeles, 792 F.2d 1408, 1415 (9th Cir.1986)).  "Absent

unusual circumstances, a police officer cannot be held liable under § 1983 for

failing to provide first aid or CPR so long as he has summoned the necessary

medical help."  Id. (citing Tagstrom v. Enockson, 857 F.2d 502, 504 (8th Cir.1988)

(holding officer who called ambulance, but failed to administer CPR to injured

---

[1] Defendants Daniel Book and Mark Seper filed separate and independent motions to dismiss the claims against them in Counts V and VIII.

motorcyclist did not violate Due Process Clause when ambulance arrived in approximately six minutes).

Plaintiffs allege that Defendants Manasco and Zwiling, stood over Clark with guns pointed while other officers ran by into the rest of the house.  Neither Manasco nor Zwilling or any of the officers who ran by them ever called for medical help.  None of the officers tried to staunch the blood flowing from Clark's wounds.  After "crucial minutes had passed" Defendant Scott Aubuchon, a police officer with the SLMPD, called for Emergency Medical Services.

Plaintiffs' allegation that medical help was not called until "crucial minutes had passed" is insufficient to state a claim against all the officers present at Clark's house for a failure to provide medical care.  Manasco and Zwilling were allegedly standing over Clark after he was shot.  Plaintiffs allege that the other officers ran into the rest of the house presumably to search and secure the residence. Aubuchon called for medical help within "crucial minutes."  Plaintiffs' factual allegation that medical help was summoned within minutes establishes that the officers fulfilled their duty to provide medical care.  As a result, I will grant Defendants' motion to dismiss this claim.

*Count VI*

In Count VI Plaintiffs assert a municipal liability claim against Defendant

The City under <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978).

Plaintiffs assert that The City has policies and/or customs of seeking warrants

without probable cause, unreasonably requesting and deploying SWAT teams for

all search warrants, and failing to ensure police officers are trained, supervised, and

disciplined for violations of arrestees' individual rights.  Plaintiffs alleged that The

City's custom and practice was a moving force behind the violation of Clark's

constitutional rights.

"To establish the existence of a policy, [a plaintiff] must point to a deliberate

choice of a guiding principle or procedure made by the municipal official who has

final authority regarding such matters."  <u>Jenkins v. County of Hennepin, Minn.</u>,

557 F.3d 628, 633 (8th Cir. 2009).  A plaintiff "must also show that the policy was

unconstitutional and that it was the moving force behind the harm that he

suffered."  <u>Id.</u>

Plaintiffs do not offer any direct evidence of an official policy of The City

directing officers to seek search warrants without probable cause.  Instead, they

cite to a 2020 report, issued by the Ethical Society of Police, regarding the SLMPD

that notes a 2015 incident when an officer lied in a search warrant and stated that

he completed surveillance on a subject; a separate incident (date unknown) when a

similar offense was committed by an officer; and a 2016 incident when an officer

repeatedly placed the same wording in search warrants.

Plaintiffs also cite a St. Louis Post-Dispatch review of warrant applications of one officer from 2007-2008 that showed his affidavits outlined the same pattern of surveillance, suspicious activity observed, and information from a confidential informant.  The article also stated that another officer, at some unspecified time was identified as having sought an unspecified number of warrants without probable cause.

In 2016, a SLMPD officer provided conflicting statements in a sworn affidavit and in trial testimony regarding whether a confidential informant provided information for a warrant application.  The judge demanded that he be provided an attorney because his testimony may implicate the practices and procedures within the entire SLMPD.  Plaintiffs also make conclusory allegations that the SLMPD commissioner Doyle Sam Dotson III, was aware, or should have been aware, of numerous incidents of officers falsifying information to secure search warrants or applying for warrants without probable cause.  None of these allegations establish a policy of The City to obtain search warrants without probable cause.  Nor do these allegations support a claim of a municipal custom.

A municipal "custom can be shown only by adducing evidence of a continuing, widespread, persistent pattern of unconstitutional misconduct.  A

plaintiff must also show either that policymakers were deliberately indifferent to the misconduct or that they tacitly authorized it." <u>Jenkins</u>, 557 F.3d 628, 634 (cleaned up).  Plaintiffs' conclusory allegations *supra* do not support a claim for a custom of a continuing, widespread, persistent pattern of unconstitutional misconduct of obtaining search warrants without probable cause.

Plaintiffs also allege that The City has a custom or policy of unreasonably deploying SWAT teams for the execution of all drug-related search warrants. Plaintiffs assert that Commissioner Dotson established a policy that required SLMPD officers to use a SWAT team when they executed "virtually every drug-related search warrant" without first requiring officers to demonstrate a reasonable suspicion or probable cause that the use of the SWAT team was necessary. Plaintiffs allege that in the case of <u>State of Missouri v. Aaron White</u>, Cause No, 1522-CR03779-01, an Officer Brown testified that SLMPD policy requires "virtually all of their work to utilize SWAT for "'safety reasons.'"  However, it is unclear what "work" Brown is referring to in his testimony.

Plaintiffs assert that, according to information obtained by the Coalition Against Police Crimes and Repression (CAPCR) through public record requests, SWAT teams were deployed in St. Louis 1780 times between 2012 and 2018 and that 97% of these deployments were to execute search warrants.  Plaintiffs assert

that CAPCR's research found that of the 10 fatal police shootings by SLMPD officers between 2013 and 2018, eight involved SWAT members or officers who would later join SWAT. Plaintiffs allege that Commissioner Dotson's policy of deploying SWAT teams for virtually all drug-related search warrants, without requiring an individual assessment regarding the reasonableness of deploying the SWAT team and despite knowing the dangers inherent in such a policy, establishes that The City was deliberately indifferent to the implementation of the policy.

In its motion to dismiss The City argues that because a magistrate judge issues a "no knock" warrant The City is not constitutionally required to second guess the magistrate judge's decision. But an unresolved issue is whether the SLMPD makes a decision to use a SWAT team to execute a "no knock" search warrant independent of the judge's approval of the warrant. In other words, just because a magistrate judge issues the warrant, does the SLMPD have the authority to decide whether or not to use a SWAT team to execute the warrant. If they do, and if the policy alleged by Plaintiffs that the SLMPD does not require officers to provide information that the use of the SWAT team is reasonable in each instance, the policy may be unconstitutional. See Z.J. by & through Jones, 931 F.3d at 688 ("An officer's decision to authorize a SWAT team to execute a warrant can, in some cases, constitute a Fourth Amendment violation.[] It is clear the decision to

send a SWAT team into a residence must be reasonable.").  As a result, I find that Plaintiffs have sufficiently stated a claim that The City has a policy of using SWAT teams without ensuring the use of the SWAT team is reasonable in the execution of each search warrant.  Plaintiffs assert that this policy was the moving force that led to the violations of Clark's constitutional rights.

Plaintiffs also allege a Monell claim against The City for failing to train, supervise, and discipline officers for seeking warrants without probable cause, deploying the SWAT team for all search warrants, and for "otherwise violating individuals' constitutional rights."  They assert that had The City properly trained, supervised, and disciplined officers for past violations the raid on Clark's house would not have taken place.

The City moves to dismiss this claim asserting Plaintiffs have failed to allege sufficient facts to support this claim.

"Under § 1983, a claim for failure to supervise requires the same analysis as a claim for failure to train.  Neither claim can succeed without evidence the municipality received notice of a pattern of unconstitutional acts committed by employees."  Atkinson v. City of Mountain View, Mo., 709 F.3d 1201, 1216–17 (8th Cir. 2013).  The municipality must demonstrate deliberate indifference or tacit authorization of the offensive acts and fail to take remedial action.  The failure to

take remedial action must proximately cause the constitutional injury at issue.

Parrish v. Ball, 594 F.3d 993, 1002 (8th Cir. 2010).

I found *supra* that Plaintiffs failed to allege sufficient facts assert a claim that police officers were seeking warrants without probable cause.  A failure, to train, supervise, or discipline on that ground also is unsupported by the complaint.

However, I have found that the Plaintiffs have sufficiently claimed that The City's alleged policy of using the SWAT team on virtually all drug-related search warrants regardless of whether the use of such force is reasonable in the execution of each warrant may be found to be unconstitutional.  If that is the policy of The City, by extension, The City is not training or supervising its officers to determine whether the use of the SWAT team is reasonable for the execution of each warrant. As a result, Plaintiffs have asserted sufficient facts to assert a claim for a failure to train or supervise on this ground.

Plaintiffs' failure to discipline claim does not assert sufficient facts to state a claim for relief.  Plaintiffs only present a handful of examples and conclusory allegations that they believe show that officers were not adequately disciplined for their actions.  Plaintiff's allegations under this claim are insufficient to establish a pattern of unconstitutional acts by police officers that was a moving force the led to the death of Clark.  Because Plaintiffs have failed to support a policy or custom

of a failure to discipline I will grant The City's motion to dismiss on this ground.

*Count VII*

In Count VII Plaintiffs assert that Defendants Strode and The City created a dangerous situation that violated Clark's substantive due process rights to "personal safety."  Plaintiffs assert that Strode's false allegations in obtaining a "no knock" search warrant and authorizing service by the SWAT team and The City's custom and practice of allowing unreasonable "no knock" warrants and the indiscriminate use of SWAT teams to execute warrants created a danger of significant harm to Clark that did not previously exist in violation of the Fourteenth Amendment.

"The Fourteenth Amendment Due Process Clause, like its Fifth Amendment counterpart, protects persons against abusive, arbitrary, or oppressive government conduct."  Gregory v. City of Rogers, Ark., 974 F.2d 1006, 1009 (8th Cir. 1992). The "Due Process Clause imposes a duty on state actors to protect or care for citizens [] when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced."  Id. at 1010.  Gross negligence and/or recklessness are insufficient to state a substantive due process claim under section 1983.  S.S. v. McMullen, 225 F.3d 960, 964 (8th Cir. 2000).

To succeed on a state created danger theory, a plaintiff must prove (1) that

he was a member of a limited, precisely definable group, (2) that the municipality's

conduct put him at a significant risk of serious, immediate, and proximate harm,

(3) that the risk was obvious or known to the municipality, (4) that the municipality

acted recklessly in conscious disregard of the risk, and (5) that in total, the

municipality's conduct shocks the conscience.  Fields v. Abbott, 652 F.3d 886, 891

(8th Cir. 2011) (cleaned up).  The "state-created danger" doctrine may be

applicable when the state actors place someone in danger of an armed police raid

or other assaultive conduct.  Flowers v. City of Minneapolis, Minn., 478 F.3d 869,

874 (8th Cir. 2007).

 Strode and The City assert that this substantive due process claim is not

cognizable because the allegations in support of the claim encompass Plaintiffs'

claims based on Fourth Amendment violations.[2]  If a particular constitutional

Amendment "'provides an explicit textual source of constitutional protection

against a particular sort of government behavior, that Amendment, not the more

generalized notion of substantive due process, must be the guide for analyzing

these claims.'"  Moran v. Clarke, 296 F.3d 638, 646 (8th Cir. 2002) (quoting

County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998) (cleaned up).  See also

Dukes v. City of Minneapolis, 339 F. App'x 665, 668 (8th Cir. 2009) (substantive

---

[2] Defendants also assert that Plaintiffs lack standing to assert this claim but I have already determined that Plaintiffs have standing to bring Clark's constitutional claims.

due process claim dismissed in light of plaintiff's claim that police officer provided false information in the search warrant affidavit).

I find that Plaintiffs' allegations in support of their state created danger claim all are based on Strode's alleged false information provided in the "no knock" search warrant affidavit and are properly analyzed under the Fourth Amendment.  As a result, Defendants' motion to dismiss Plaintiffs' state created danger claim will be granted.

*Count VIII*

In Count VIII Plaintiffs assert a wrongful death claim against all Defendants under Missouri's wrongful death statute Mo. Rev. Stat. § 537.080.  To prove liability under Missouri's wrongful death statute, a plaintiff is required to establish that the defendant owed a duty to the decedent, that the defendant breached that duty, and that the breach proximately caused the decedent's death.  White v. United States, 959 F.3d 328, 332 (8th Cir. 2020).  Plaintiffs assert that Defendants breached their duty of care to Clark by failing to properly investigate before seeking a warrant; falsifying information in the supporting affidavit for the warrant; seeking a warrant without probable cause; seeking a "no knock" warrant without reasonable suspicion; unreasonably authorizing the use of the SWAT team in executing the warrant; using excessive force; and failing to provide Clark with

immediate medical case after he was shot.  Plaintiffs assert that The City breached its duty by implementing policies or customs that resulted in the Defendant officers' unlawful conduct.  Plaintiffs also assert that The City waived any defense of sovereign immunity by having insurance and/or adopting self-insurance to satisfy all or part of a possible judgment in this action.

All of the individual police officer defendants have moved to dismiss this claim on the grounds that they have official immunity under Missouri law. "Missouri applies the doctrine of official immunity to protect public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts.  An act is discretionary ... where there is any room whatsoever for variation in when and how a particular task can be done.  An officer's decision to use force in the performance of his duties is discretionary."  Torres, 39 F.4th at 507–508 (cleaned up).  Official immunity will not protect acts performed in bad faith or with malice.  Id. at 508. "Bad faith requires a dishonest purpose, moral obliquity, conscious wrongdoing, or breach of a known duty through some ulterior motive, while malice involves actions that are so reckless or wantonly and willfully in disregard of one's rights that a trier of fact could infer from such conduct bad faith or an improper or wrongful motive."  Id.

I find that Plaintiffs' have asserted sufficient facts outlined *supra* against Defendant Strode to establish a bad faith claim to overcome his claim of official immunity.  However, Plaintiffs' factual allegations against all the other individual officers do not support a claim of bad faith or improper or wrongful motive to overcome their assertion of official immunity.

The City filed a motion to dismiss this claim asserting that it is barred by sovereign immunity.  Missouri Revised Statute § 537.600 provides that public entities enjoy sovereign immunity as it existed at common law, unless immunity is waived, abrogated, or modified by statute.  Richardson v. City of St. Louis, 293 S.W.3d 133, 136 (E.D. Mo. 2009).  Under this doctrine, municipalities are entitled to sovereign immunity when they are engaged in "governmental" functions – ones performed for the common good of all – but not when engaged in "proprietary" functions – those performed for the special benefit or profit of the municipality acting as a corporate entity.  Jungerman v. City of Raytown, 925 S.W.2d 202, 204 (Mo. 1996), abrogated on other grounds by Southers v. City of Farmington, 263 S.W.3d 603 (Mo. 2008).  The conduct of police officers is generally construed as governmental in nature.  See Jungerman, 925 S.W.2d at 204-205.

A public entity may waive sovereign immunity by purchasing an insurance policy covering tort claims. Mo. Rev. Stat. §§ 71.185 & 537.610.1. Whether

sovereign immunity is waived in a particular case depends on whether the plaintiff's claim falls within the purposes covered by the defendant's policy.  Epps v. City of Pine Lawn, 353 F.3d 588, 594 (8th Cir. 2003) (citing Casey v. Chung, 989 S.W.2d 592, 593 (Mo. Ct. App. 1998)).

Plaintiffs assert that The City waived any defense of sovereign immunity by having insurance and/or adopting self-insurance to satisfy all or part of a possible judgment in this action.  Plaintiffs allege that The City "obtains insurance from the Public Facilities Protection Corporation, a not-for-profit corporation which is funded, at least in part, by annual payments from the City.  On information and belief, the funds are later disbursed by the corporation to pay any and all claims against the City, including claims against City police officers relating to violations of constitutional rights."

Plaintiffs' allegation that The City has waived any defense of sovereign immunity by having insurance and/or adopting self-insurance to satisfy all or part of a possible judgment in this action has been specifically rejected by Torres, 39 F.4th at 510 and Hendrix v. City of St. Louis, 636 S.W.3d 889, 900-901 (Mo. Ct. App. 2021).  As a result, I will grant The City's motion to dismiss this claim because it is barred by sovereign immunity.

Accordingly,

**IT IS HEREBY ORDERED that** Defendant City of St. Louis's motion to dismiss Count VI [15] is **granted in part and denied in part**.  The motion is **DENIED** as to Plaintiffs' claim regarding a policy of unconstitutionally deploying the SWAT team to execute drug-related search warrants and as to Plaintiffs' claim of a failure to train and supervise officers about the reasonable deployment of the SWAT team in executing search warrants.  The motion to dismiss is **GRANTED** as to all of the other claims in Count VI.

**IT IS FURTHER ORDERED that** Defendant City of St. Louis's motion to dismiss Counts VII and VIII [15] is **GRANTED**.

**IT IS FURTHER ORDERED that** Defendant Thomas Strode's motion to dismiss Counts I, II, and III [17] is **DENIED**.

**IT IS FURTHER ORDERED that** Defendant Thomas Strode's motion to dismiss Count VII [17] is **GRANTED**.

**IT IS FURTHER ORDERED that** Defendant Thomas Strode's motion to dismiss Count VIII [17] is **DENIED**.

**IT IS FURTHER ORDERED that** Defendants John Jones, Nicholas Manasco, James Wurm, Brandon Moore, Ronald Mueller, Joshua Becherer, Ronald Allen, Bennie Blackmon, Matthew Tesreau, James Zwilling, Glennon Frigerio, Joseph Busso, Jon Long, Daniel Cora, Timothy Boyce, Michael Flatley,

and Curtis Burgdorf Individual Police Officers Thomas Strode's motion to dismiss Counts V and VIII [19] is **GRANTED**.

**IT IS FURTHER ORDERED that** Defendant Nicholas Manasco's motion to dismiss Counts V and VIII [21] is **GRANTED**.

**IT IS FURTHER ORDERED that** Defendant Daniel Book's motion to dismiss Counts V and VIII [45] is **GRANTED**.

**IT IS FURTHER ORDERED that** Defendant Mark Seper's motion to dismiss Counts V and VIII [59] is **GRANTED**.


RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 30th day of September, 2022.